# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RICHARD OCHOA, | Case No. 1:12-cv-00604-SKO |
| Plaintiff, | **ORDER REGARDING PLAINTIFF'S COMPLAINT** |
| v. | |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security, | |
| Defendant. | |

## INTRODUCTION

Plaintiff Richard Ochoa ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security (the "Commissioner" or "Defendant") denying his application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") pursuant to Titles II and XVI of the Social Security Act. 42 U.S.C. §§ 405(g), 1383(c)(3). The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Sheila K. Oberto, United States Magistrate Judge.[1]

## FACTUAL BACKGROUND

Plaintiff was born in 1962, completed high school, and worked as a logistics shipper and project manager/sub-contractor. (Administrative Record ("AR") 76, 82, 83, 166.) On March 13,

---

[1] The parties consented to the jurisdiction of the United States Magistrate Judge for all purposes. (Docs. 10, 12.)

2008, Plaintiff filed applications for DIB and SSI, alleging disability beginning on November 30, 2007, due to a car accident causing neck injuries, brain trauma, depression, anxiety, and nightmares. (AR 76-82, 165.)

**A.      Relevant Administrative Proceedings[2]**

    **1.      Hearing**

Plaintiff's applications for DIB and SSI benefits were denied on September 5, 2008, and again on reconsideration on January 9, 2009. (AR 86-90, 92-96.) Plaintiff requested a hearing before an administrative law judge ("ALJ"), and on January 13, 2010, a hearing was held before ALJ Sandra K. Rogers. (AR 39-74, 98-99.)

At the hearing, vocational expert ("VE") Michael Stinson testified. The ALJ asked the VE whether a hypothetical person could perform Plaintiff's past relevant work if the person was "capable of occasionally lifting 20 pounds, frequently 10, standing at least two hours in an eight-hour day, sitting about six, could occasionally push and pull with the upper extremities, could occasionally climb . . . ramps and stairs but never ladders, ropes, and scaffolds, and occasionally balance stoop, kneel, crouch, and crawl, and could only occasionally do overhead reaching." (AR 66.) The VE testified that such a person was unable to perform Plaintiff's past work. (AR 66.)

The ALJ questioned whether there were other jobs existing in the national or regional economies that such a person could perform. (AR 67.) The VE asserted that there were "some sedentary job titles . . . that would fit [the] hypothetical." (AR 67.) The VE testified that such a person could work as a call out operator, Dictionary of Occupational Title ("DOT") code 237.367-014, skill level of 2, with "unskilled, sedentary exertion, . . . done primarily sit[ting]-down with a chance to get up and down occasionally" and with occasional reaching. (AR 68.) The VE testified that there were 80 positions in the Sacramento area, 1,233 in California, and 19,122 in the national economy. (AR 67-68.)

---

[2] Plaintiff's brief raises arguments concerning the administrative law judge's finding that there are jobs that exist in significant numbers that Plaintiff could perform in light of his abilities. (Doc. 20, 6:5-13:23.) As such, the Court will only consider evidence related to the ALJ's findings regarding the jobs Plaintiff could perform, as Plaintiff has waived any other arguments. *See Greger v. Barnhart*, 464 F.3d 968, 973 (9th Cir. 2006) (explaining that arguments not raised before the district court are generally waived).

The VE further testified that such a hypothetical person could work as a school bus monitor, DOT code 372.667-042, which the VE defined as skill level 2, unskilled, sedentary, with no overhead reaching. (AR 69.) The VE indicated that there were 74 jobs in the Sacramento area, 1,094 jobs in California, and 25,590 jobs in the national economy. (AR 69.)

**2.     ALJ's Decision**

On February 26, 2010, the ALJ issued a decision finding Plaintiff not disabled since November 30, 2007, the alleged disability onset date. (AR 21-34.) Specifically, the ALJ found that (1) Plaintiff met the insured status requirements of the Act through December 31, 2008; (2) Plaintiff had not engaged in substantial gainful activity since November 30, 2007, the alleged disability onset date; (3) Plaintiff had severe impairments of degenerative disc disease with radiculitis and migraine headaches based on the requirements in the Code of Federal Regulations; (4) Plaintiff did not have an impairment or combination of impairments that met or equaled one of the impairments set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1; (5) Plaintiff had the residual functional capacity ("RFC")[3] to perform light work[4] except the Plaintiff could stand or walk two hours in an eight-hour workday, occasionally push or pull with his upper extremities, never climb ladders ropes, or scaffolds, and occasionally climb ramps or stairs, and balance, stoop, kneel, crouch, crawl, and reach overhead; (6) Plaintiff was unable to perform past relevant work; (7) Plaintiff was defined as a younger individual on the alleged disability onset date; (8) Plaintiff had at least a high school education and was able to communicate in English; (9) the transferability of job skills was not material to the disability determination because Plaintiff was

---

[3] RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis of 8 hours a day, for 5 days a week, or an equivalent work schedule. Social Security Ruling 96-8p. The RFC assessment considers only functional limitations and restrictions that result from an individual's medically determinable impairment or combination of impairments. Id. "In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record including, inter alia, medical records, lay evidence, and 'the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment.'" *Robbins v. Soc. Sec. Admin*., 466 F.3d 880, 883 (9th Cir. 2006).

[4] Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, the claimant must have the ability to do substantially all of these activities. If someone can do light work, the Commissioner determines that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time. *See* 20 C.F.R. §§ 404.1567(b), 416.967(b).

"not disabled" under the Medical-Vocational Rules whether or not Plaintiff had transferrable job skills; (10) there were jobs that exist in significant numbers in the national economy that Plaintiff could perform; and (11) Plaintiff had not been under a disability as defined in the Social Security Act since November 30, 2007, through the date of the decision. (AR 26-33.)

Plaintiff sought review of the ALJ's decision with the Appeals Council, which was denied on February 29, 2012. (AR 1-3.) Therefore, the ALJ's decision became the final decision of the Commissioner. 20 C.F.R. §§ 404.981, 416.1481.

**B.     Plaintiff's Current Appeal**

On April 16, 2012, Plaintiff filed the current complaint before this Court seeking review of the ALJ's decision. (Doc. 1.) Plaintiff contends that the ALJ failed to sustain his burden of proof to show that there were a significant number of jobs in the regional economy that Plaintiff could perform. (Doc. 20.)

### SCOPE OF REVIEW

The ALJ's decision denying benefits "will be disturbed only if that decision is not supported by substantial evidence or it is based upon legal error." *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999). In reviewing the Commissioner's decision, the Court may not substitute its judgment for that of the Commissioner. *Macri v. Chater*, 93 F.3d 540, 543 (9th Cir. 1996). Instead, the Court must determine whether the Commissioner applied the proper legal standards and whether substantial evidence exists in the record to support the Commissioner's findings. *See Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007).

"Substantial evidence is more than a mere scintilla but less than a preponderance." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008). "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. of N.Y. v. NLRB*, 305 U.S. 197, 229 (1938)). The Court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (citation and internal quotation marks omitted).

**APPLICABLE LAW**

An individual is considered disabled for purposes of disability benefits if he is unable to engage in any substantial, gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted, or can be expected to last, for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); *see also Barnhart v. Thomas*, 540 U.S. 20, 23 (2003). The impairment or impairments must result from anatomical, physiological, or psychological abnormalities that are demonstrable by medically accepted clinical and laboratory diagnostic techniques and must be of such severity that the claimant is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial, gainful work that exists in the national economy. 42 U.S.C. §§ 423(d)(2)-(3), 1382c(a)(3)(B), (D).

The regulations provide that the ALJ must undertake a specific five-step sequential analysis in the process of evaluating a disability. In the First Step, the ALJ must determine whether the claimant is currently engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(b), 416.920(b). If not, in the Second Step, the ALJ must determine whether the claimant has a severe impairment or a combination of impairments significantly limiting her from performing basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c). If so, in the Third Step, the ALJ must determine whether the claimant has a severe impairment or combination of impairments that meets or equals the requirements of the Listing of Impairments ("Listing"), 20 C.F.R. 404, Subpart P, App. 1. 20 C.F.R. §§ 404.1520(d), 416.920(d). If not, in the Fourth Step, the ALJ must determine whether the claimant has sufficient residual functional capacity despite the impairment or various limitations to perform her past work. 20 C.F.R. §§ 404.1520(f), 416.920(f). If not, in Step Five, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(g), 416.920(g). If a claimant is found to be disabled or not disabled at any step in the sequence, there is no need to consider subsequent steps. *Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999); 20 C.F.R. §§ 404.1520, 416.920.

**DISCUSSION**

Plaintiff contends that the ALJ did not meet her burden at Step Five of the sequential evaluation by failing to show that there are jobs existing in significant numbers in the regional economy that Plaintiff could perform in light of his RFC. Plaintiff contends that, in response to a hypothetical that matched the ALJ's RFC assessment of Plaintiff, the VE testified that such a person could perform sedentary work, and specifically noted the jobs of call out operator and school bus monitor. However, the position of school bus monitor is classified by the DOT as light, not sedentary, and the ALJ did not solicit a sufficient explanation to allow for a deviation from the DOT. As such, the only remaining occupation that Plaintiff could perform was that of call out operator, and the VE testified that there were 80 jobs in the regional economy (Sacramento), 1,233 jobs in California, and 19,122 jobs nationally. Plaintiff alleges that these numbers are insufficient. Further, the VE did not describe the methodology on how the job numbers were calculated, nor did the ALJ solicit such testimony. Plaintiff asserts that, based on *Job Browser Pro*, there are actually only 13 such jobs in the Sacramento region, 513 jobs in the state, and 8,597 jobs in the nation. As such, Plaintiff contends that the ALJ failed to show that there are a significant number of jobs existing in the regional economy that Plaintiff can perform. (Doc. 20, 6:5-13:23.)

Defendant contends that the ALJ properly relied on the VE's testimony in finding that there are a significant number of jobs existing in the national economy that Plaintiff could perform. Defendant asserts that there was no inconsistency between the ALJ's RFC finding and the duties of a school bus monitor position as set forth in the DOT; thus, the ALJ properly considered that position. Additionally, even if the Court disregards the school bus monitor position, the VE's testimony regarding the number of call out operator positions was sufficient for the ALJ to find the existence of a significant number of jobs. The ALJ is entitled to consider the number of jobs in both the region where the claimant lives as well as in other regions of the country. As such, Defendant asserts that the ALJ properly met her Step Five burden to show that there existed a sufficient number of jobs. (Doc. 23, 5:15-10:24.)

A.      **Legal Standard**

At Step Five of the sequential evaluation, the burden shifts to the Commissioner to show that the claimant can perform other jobs that exist in the national economy. *Bray v. Comm'r Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir.2009); *Hoopai v. Astrue*, 499 F.3d 1071, 1074-75 (9th Cir. 2007).  To meet this burden, the Commissioner "must identify specific jobs existing in substantial numbers in the national economy that [the] claimant can perform despite [his] identified limitations." *Meanel v. Apfel*, 172 F.3d 1111, 1114 (9th Cir.1999) (citation and internal quotation marks omitted).

There are two ways for the Commissioner to meet this burden: "(a) by the testimony of a vocational expert, or (b) by reference to the Medical Vocational Guidelines ["Grids"] at 20 C.F.R. pt. 404, subpt. P, app. 2." *Tackett v. Apfel*, 180 F.3d 1094, 1099 (9th Cir.1999); *accord Lockwood v. Comm'r Soc. Sec. Admin.*, 616 F.3d 1068, 1071 (9th Cir. 2010).  However, "[w]hen [the Grids] do not adequately take into account [a] claimant's abilities and limitations, the Grids are to be used only as a framework, and a vocational expert must be consulted." *Thomas v. Barnhart*, 278 F.3d 947, 960 (9th Cir.2002); *Bray*, 554 F.3d at 1223 n. 4.  An ALJ may rely on a VE's "testimony regarding the number of relevant jobs in the national economy" and a VE's "recognized expertise provides the necessary foundation for his or her testimony. Thus, no additional foundation is required." *Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir.2005); *see also Newsome v. Colvin*, No. EDCV 12-0371 AN, 2013 WL 800699, at *1 (C.D. Cal. Mar. 4, 2013).

B.      **The ALJ's Step Five Determination**

At Step Five, the ALJ determined that there was "work that exists in significant numbers in the national economy" that Plaintiff could perform to support a finding that Plaintiff was "not disabled."  (AR 33.)  In determining that there were jobs that Plaintiffs could perform, the ALJ relied on the testimony of the VE that a hypothetical person with Plaintiff's limitations could "perform the requirements of representative occupations such as call out operator (DOT 237.367-014), which is sedentary unskilled work with 80 jobs in the Sacramento region, 1,233 jobs in California, and 19,122 jobs nationally."  (AR 33.)  The ALJ also noted that the VE testified that such a person could "also work as a school bus monitor (DOT 372.667-042), which is sedentary

7

unskilled work with 74 jobs in Sacramento, 1,094 jobs in California, and 21,590 jobs nationally." (AR 33.)

### 1. The ALJ Erred by Failing to Explain the Discrepancy Between the VE's Testimony and the DOT's Classification of the School Bus Monitor Position

The ALJ's decision found that Plaintiff had the RFC to perform "light work," but with additional restrictions of being able to "stand or walk for 2 hours in an 8-hour workday. [Plaintiff] can occasionally push or pull with his upper extremities. He can never climb ladders, ropes, or scaffolds. He can occasionally climb ramps or stairs, balance, stoop, kneel, crouch, crawl, and reach overhead." (AR 28.)

At the hearing held on January 13, 2013, the ALJ asked the VE whether a hypothetical person could perform Plaintiff's past relevant work if that person was of Plaintiff's age, education, language, and work background, and "was capable of occasionally lifting 20 pounds, frequently 10, standing at least two hours in an eight-hour day, sitting about six, could occasionally push and pull with the upper extremities, could occasionally climb . . . ramps and stairs but never ladders, ropes, and scaffolds, and occasionally balance stoop, kneel, crouch, and crawl, and could only occasionally do overhead reaching." (AR 66.) The VE replied that such a person could not perform Plaintiff's prior work, but that there were "some sedentary job titles . . . that would fit [the ALJ's] hypothetical." (AR 66-67.)

As such, based on the ALJ's RFC, the VE testified that a person with Plaintiff's limitations could perform "some sedentary" jobs and provided two examples: call out operator and school bus monitor. (AR 67-69.) The VE testified that both jobs were sedentary (AR 68-69), although the DOT classifies the position of school bus monitor as light, not sedentary, and notes that the "[p]hysical demand requirements are in excess of those for Sedentary Work." DICOT 372.667-042, 1991 WL 673102.

Social Security Ruling ("SSR") 00-4p provides that, before relying on VE evidence to support a disability determination or decision, the ALJ must "[i]Identify and obtain a reasonable explanation for any conflicts between occupational evidence provided by VEs . . . and information in the Dictionary of Occupational Titles (DOT) . . . and [e]xplain in the determination or decision

how any conflict that has been identified was resolved." SSR 00-4p.[5] The ALJ thus has an "affirmative responsibility to ask about any possible conflict between that VE . . . evidence and information provided in the DOT," and, if the "evidence appears to conflict with the DOT, the [ALJ] will obtain a reasonable explanation for the apparent conflict." *Id*. Accordingly, "the ALJ must first determine whether a conflict exists. If it does, the ALJ must then determine whether the vocational expert's explanation for the conflict is reasonable and whether a basis exists for relying on the expert rather than the *Dictionary of Occupational Titles*." *Massachi v. Astrue*, 486 F.3d 1149, 1153 (9th Cir. 2007).

Here, a conflict exists between the VE's testimony of the limitations for the school bus monitor position, and the DOT's description of the position. The VE testified that, based upon the ALJ's RFC, a hypothetical person with those limitations could perform "some sedentary job[s]," and that the job of school bus monitor was such a "sedentary" position. (AR 67, 69.) The DOT, however, describes school bus monitor as "light work." DICOT 372.667-042, 1991 WL 673102. The Court notes that classifying the position of school bus monitor as sedentary as opposed to light was likely an error by the VE. This error was further compounded by the ALJ, who failed to perform the procedural requirements set forth in SSR 00-4p. The "ALJ did not ask the vocational expert whether [his] testimony conflicted with the Dictionary of Occupational Titles and, if so, whether there was a reasonable explanation for the conflict." *Massachi*, 486 F.3d at 1153-54; *see also* AR 57-73. As such, the Court "cannot determine whether the ALJ properly relied on [the VE's] testimony," and thus "cannot determine whether substantial evidence supports the ALJ's step-five finding that [Plaintiff] could perform other work." Accordingly, the ALJ committed error when relying upon the position of school bus monitor at Step Five to establish that work existed in significant numbers in the national economy that Plaintiff could perform, due to the conflict between the VE's testimony regarding this position and the DOT's classification. (AR 33.)

---

[5] Social Security Rulings are "final opinions and orders and statements of policy and interpretations" that the Social Security Administration has adopted. 20 C.F.R. § 402.35(b)(1). Once published, these rulings are binding precedent upon ALJs. *Heckler v. Edwards*, 465 U.S. 870, 873 n.3 (1984); *Gatliff v. Comm'r of Soc. Sec. Admin.*, 172 F.3d 690, 692 n.2 (9th Cir. 1999).

### 2. The ALJ's Reliance on the Call Out Operator Position Alone Did Not Meet the Burden at Step Five for Showing that there are a Significant Number of Jobs

There is no apparent discrepancy between the VE's testimony concerning the position of call out operator as sedentary work that could be performed by a hypothetical person with Plaintiff's limitations and the DOT's classification of the position as sedentary.  DICOT 237.367-014 (G.P.O.), 1991 WL 672186; *see also* AR 67-68.)  As such, the ALJ may consider the position of call out operator in the Step Five analysis.  However, Plaintiff contends that because the ALJ erred in considering the position of school bus monitor, the remaining job of call out monitor is insufficient to meet the ALJ's Step Five burden to show that there are a significant number of positions that exist in the regional economy.  (Doc. 20, 7:24-13:23.)

The VE provided testimony regarding the number of call out jobs and stated that there were "80 in the Sacramento area.  California, 1,233.  And the national economy, 19,122."  (AR 68-69.)  Plaintiff asserts that "[t]his does not constitute a significant number of jobs."  (Doc. 20, 8:2.)  Further, Plaintiff contends that there were, according to *Job Browser Pro*, actually a lower number of call out operator jobs than noted by the VE - 13 in the Sacramento area, 513 in California, and 8,597 in the nation in 2009, and 13 in the Sacramento area, 508 in California, and 8,510 in the nation in 2010.  (Doc. 20, 10:1-5.)

Defendant contends that the statutes and regulations contemplate that a claimant can be found not disabled if he can engage in substantial gainful work that exists in the "national economy," and not just within the individual's region.  (Doc. 23, 7:19-26.)  Defendant asserts that "[w]ork is considered to exist in the national economy where it exists in significant numbers in the region where an individual lives or in several other regions of the country, and it does not matter whether work exists in the immediate area in which an individual lives."  (Doc. 23, 7:23-27.)

To support a decision that a claimant is not disabled, the ALJ is required to show that the claimant can perform work that exists in significant numbers in the national economy.  20 C.F.R. §§ 404.1520(g), 416.920(g).

> An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in

which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. For purposes of the preceding sentence (with respect to any individual), "work which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

42 U.S.C. § 423(d)(2)(A). The ALJ must show that any work a claimant can do "must exist in significant numbers in the national economy (either in the region where you live or in several regions in the country)." 20 C.F.R. §§ 404.1560(c)(1), 416.960(c)(1).

The Ninth Circuit has "never set out a bright-line rule for what constitutes a 'significant number' of jobs," but instead finds a "comparison to other cases . . . instructive." *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012). In *Beltran*, the court determined that 135 regional jobs and 1,680 national jobs were not a significant number of jobs. *Id*. at 389-90. In making that determination, the Ninth Circuit in *Beltran* considered cases that addressed what constitutes a significant number of jobs. *See id.* at 389 (citing *Barker v. Sec'y of Health & Human Servs*, 882 F.2d 1474, 1479 (9th Cir.1989) (1,266 jobs regional jobs significant); *Martinez v. Heckler*, 807 F.2d 771, 775 (9th Cir.1987) (amended), (3,750 to 4,250 regional jobs significant); *Thomas*, 278 F.3d at 960 (1,300 jobs in the Oregon region and 622,000 in the national economy significant); *Johnson v. Shalala*, 60 F.3d 1428, 1435 (9th Cir.1995) (30,000 regional jobs significant); *Moncada v. Chater*, 60 F.3d 521, 524 (9th Cir.1995) (2,300 regional jobs and 64,000 nationwide jobs significant)).

Additional Ninth Circuit cases have found 64,000 jobs nationwide to be significant, *Moncada v. Chater*, 60 F.3d 521, 524 (9th Cir.1995), as well as larger numbers. *See Thomas*, 278 F.3d at 960 (622,000 jobs in the national economy significant); *Moore v. Apfel*, 216 F.3d 864, 869 (9th Cir. 2000) (7,700 regional and 125,000 national jobs significant). Further, District courts considering the Ninth Circuit findings have determined that smaller numbers of jobs are not significant. *See Coletta v. Massanari*, 163 F. Supp. 2d 1101, 1106 (N.D. Cal. 2001) (363 jobs in the state economy and 4,752 positions in the national economy not significant); *Valencia v. Astrue*, No. C 11-06223 LB, 2013 WL 1209353, at *18 (N.D. Cal. Mar. 25, 2013) (114 regional jobs and 14,082 national jobs not significant).

11

Here, the 80 jobs in the Sacramento area is less than the 135 regional jobs in *Beltran* and, further, is substantially less than the number of regional jobs set forth in the cases that the Ninth Circuit has found to be significant (ranging, as noted above, from 1,266 to 30,000 regional jobs). As such, the ALJ has not shown that there are a significant number of jobs in the region that Plaintiff could perform.

Defendant contends that the ALJ is not required to show that there is work in Plaintiff's immediate area, but must instead show that gainful work exists in the national economy, which is either in the region where such an individual lives or in several regions of the country. (Doc. 23, 7:19-28 (citing 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1560(c)(1)).) Defendant asserts that the 1,233 jobs in California and the 19,122 national jobs identified by the VE is a significant number of jobs. (Doc. 23, 7:19-8:18.)

The 19,122 jobs in the national economy exceed the 1,680 national jobs in *Beltran* that the Ninth Circuit found was not a significant number of jobs. *Beltran*, 700 F.3d at 389-90. However, the Court must compare the 19,122 national jobs with the number of jobs that other courts have found to be a significant number of jobs. *See id.* at 389 ("[A] comparison to other cases is instructive.") When doing such a comparison, the number of national jobs identified here -- 19,122 -- is closer to the number of jobs found to be not significant (14,082 national jobs identified in *Valencia*, 2013 WL 1209353, at *18) than significant (64,000 national jobs identified by the Ninth Circuit in *Moncada*, 60 F.3d at 524).

The Court notes that number of jobs identified here is a close call when determining whether the ALJ has met the Step Five burden of showing that there is a significant number of jobs existing that Plaintiff could perform, since the number falls between that found to be not significant (14,082) and significant (64,000). However, the ALJ based her decision in part by considering the number of jobs for *both* the call out operator *and* the school bus monitor. (AR 33.) As noted above, the ALJ erred in considering the school bus monitor position because she failed to explain the discrepancy between the VE's testimony and the DOT's classification. As such, the ALJ did not have the opportunity to determine whether the call out operator, taken alone, is work that exists in significant numbers to meet the Step Five burden, or whether additional

12

testimony should be solicited to determine if there are other jobs that Plaintiff could perform. *See Cardona v. Colvin*, No. EDCV 12-0895-CW, 2013 WL 2285354, at *5 (C.D. Cal. May 22, 2013) (finding that "where the VE identified two jobs that the plaintiff could perform, but one of these jobs was identified in error, the ALJ should have the opportunity in the first instance to determine whether the remaining number of jobs is sufficient, or if there are additional jobs plaintiff can perform within an adequately supported RFC" (citation and internal quotation marks omitted).)

Accordingly, this case is properly remanded to allow the ALJ to assess whether the position of call out operator, considered alone, constitutes a significant number of jobs that Plaintiff could perform or whether additional testimony is required to determine if there are further jobs that Plaintiff could perform based upon his RFC.

As a final matter, Plaintiff contends that the number of jobs identified by the VE did not adequately reflect accurate numbers and should have been lower based upon the source *Job Browser Pro*. The Court declines to consider this assertion, instead finding that there is a question of whether the number of jobs identified by the VE was sufficient without having to consider if that number should have been lower. However, the Court notes that every California district court case that has considered the assertion that *Job Browser Pro* be used has rejected that assertion, noting that the ALJ is entitled to rely on the VE's testimony (*see* 20 C.F.R. §§ 404.1566(e), 416.966(e)), *Job Browser Pro* is not included in the list of published sources recognized in social security regulations, and that the data derived from *Job Browser Pro* does not undermine the reliability of the VE's opinion. *See, e.g., Peck v. Colvin*, No. No. CV 12-577 AGR, 2013 WL 3121280, at *3 (C.D. Cal. June 19, 2013); *Villareal v. Colvin*, No. EDCV 12-01640-JEM, 2013 WL 3071259, at *5-*6 (C.D. Cal. June 18, 2013); *Valenzuela v. Colvin*, No. CV 12-0754-MAN, 2013 WL 2285232, at *3-*4 (C.D. Cal. May 23, 2013); *Hunt v. Colvin*, No. EDCV 12-1117 AN, 2013 WL 1969401, at *2-*3 (C.D. Cal. May 13, 2013); *Engrave v. Colvin*, No. EDCV 12-2021 JC, 2013 WL 1661754, at *3-*4 (C.D. Cal. Apr. 17, 2013); *Gonzales v. Colvin*, No. CV 12-3501-PJW, 2013 WL 1614937, *1-*2 (C.D. Cal. Apr. 15, 2013); *McCaleb v. Colvin*, No. EDCV 12-01428-JEM, 2013 WL 1516259, at *5-*6 (C.D. Cal. Apr. 12, 2013); *Newsome*, 2013 WL 800699, at *1-*3; *Gardner v. Colvin*, No. CV 12-07275-MLG, 2013 WL 781984, at *2-*3 (C.D. Cal. Mar.

1, 2013); *Bradley v. Astrue*, NO. CV 12-3361-E, 2012 WL 5902349, at *7 (C.D. Cal. Nov. 26, 2012).

**C.    Remand is Appropriate**

As a general rule, remand is warranted where additional administrative proceedings could remedy the defects in the Commissioner's decision. *See Harman v. Apfel*, 211 F.3d 1172, 1179 (9th Cir. 2000). In this case, remand is appropriate for renewed consideration at Step Five of whether there are a significant number of jobs in the national economy that can be performed by Plaintiff. The ALJ is instructed to take whatever further action is deemed appropriate consistent with this decision.

## CONCLUSION

Based on the foregoing, the Court finds that the ALJ's decision is not supported by substantial evidence and is, therefore, REVERSED and the case REMANDED to the ALJ for further proceedings consistent with this order. The Clerk of this Court is DIRECTED to enter judgment in favor of Plaintiff Richard Ochoa and against Defendant Carolyn W. Colvin, Acting Commissioner of Social Security.

IT IS SO ORDERED.

Dated:    **September 6, 2013**                    **/s/ Sheila K. Oberto**
                                                   UNITED STATES MAGISTRATE JUDGE